15 CV 2258

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QIANG WANG, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) | **Case No.** <br><br> **CLASS ACTION** |
| Plaintiff, ) ) ) | |
| v. ) ) ) | **DEMAND FOR JURY TRIAL** |
| YOUKU TUDOU INC., VICTOR WING CHEUNG KOO, and MICHAEL GE XU, ) ) ) ) |  |
| Defendants. ) ) ) | |

<u>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**</u>

Plaintiff Qiang Wang ("Plaintiff"), individually and on behalf of all other persons similarly situated, by the undersigned attorneys, for the complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Youku Tudou Inc. ("YOKU" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired YOKU securities traded on the New York Stock Exchange ("NYSE") between February 27, 2014 and March 19, 2015, both dates inclusive (the "Class Period").  Plaintiff seeks to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     YOKU purports to operate as an Internet television company in the People's Republic of China.  Its Internet television platform enables consumers to search, view, and share video content across various devices.  The Company's services for users comprise  an online video content library consisting primarily of professionally produced content, including television serial dramas, movies, current event reports, variety shows, and music videos.

3.     YOKU lists American Depositary Shares ("ADS") on the NYSE under the ticker symbol "YOKU."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company improperly recognized revenue for multi-element arrangements; (2) the Company improperly recorded certain nonmonetary transactions to exchange online broadcasting rights of video content with other online video broadcasting companies at the carrying values of the broadcasting rights transacted, instead of the properly-accounted fair value; (3) the Company improperly accounted for its licensed content as long-lived assets; (4) the Company lacked

2

adequate internal controls over financial reporting; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

5.     On Tuesday, March 17, 2015, the Company announced that it would release its fourth quarter results on Thursday, March 19, 2015, raising red flags by giving investors only two days-notice to prepare for YOKU's earnings announcement.

6.     On March 19, 2015, the red flags materialized as the Company reported a net loss of $51.3 million, compared to $4 million in the same quarter of 2013.  Moreover, YOKU disclosed that the SEC is investigating certain aspects of the Company's past accounting relating to revenue recognition for multi-part deals, accounting of "non-monetary exchanges of licensed content" and the classification of licensed content as long-lived assets. The Company also announced that it is now "evaluating the impact to its 2014 and historical financial statements."

7.     In reaction to this news, YOKU's stock price dropped nearly 11%, from a March 19, 2015 closing price of $15.15 per share, to close at $13.50 on March 20, 2015.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

3

11.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, purchased YOKU securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Victor Wing Cheung Koo ("Koo") has served as the Company's Chairman and Chief Executive Officer at all relevant times.

15.     Defendant Michael Ge Xu ("Xu") has served as the Company's Chief Financial Officer at all relevant times.

16.     The defendants referenced above in ¶¶ 14 – 15 are sometimes referred to herein as the "Individual Defendants."

17.     Defendant YOKU and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     YOKU purports to be China's leading Internet television company. Company platforms enable users to search, view and share high-quality video content quickly and easily

4

across multiple devices. The Company currently derives substantially all of its revenues from online advertising services.

19. To that end, and as disclosed in the Company's 2013 20-F, the Company's advertising arrangements generally contain multiple deliverables, and revenue is supposed to be recognized at commencement of delivery of the last deliverable. Due to the nature of the Company's advertisement arrangements, wherein revenue is contingent upon the delivery of undelivered items, revenue is recognized ratably over the performance period of the last deliverable in the arrangement. Revenue is deferred when non-refundable payments are received from customers prior to satisfaction of revenue recognition criteria discussed above.

## Materially False and Misleading
## Statements Issued During the Period

20. On February 27, 2014, the first day of the Class Period, YOKU announced its unaudited financial results for the fourth quarter and fiscal year 2013. For the fourth quarter, net revenues were RMB901.3 million (US$148.9 million), a 42% increase from the corresponding period in 2012; gross profit was RMB254.3 million (US$42.0 million), a 119% increase from the corresponding period in 2012; and cash, cash equivalents, restricted cash and short-term investments totaled RMB3.2 billion (US$524.7 million) as of December 31, 2013. For the fiscal year 2013, net revenues were RMB3.0 billion (US$500.3 million); and gross profit was RMB541.1 million (US$89.4 million).

21. On April 16, 2014, the Company filed an annual report for the period ended December 31, 2013 on Form 20-F with the SEC, which was signed by defendant Koo, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the 2013 Form 20-F contained certifications signed pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Koo and Xu, stating that the financial

information contained in the Form 20-F was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

22.    On May 22, 2014, the Company announced its unaudited financial results for first quarter 2014. For the quarter, net revenues were RMB700.4 million (US$112.7 million), a 36% increase from the corresponding period in 2013; gross profit was RMB85.6 million (US$13.8 million), a 501% increase from the corresponding period in 2013; and cash, cash equivalents, restricted cash and short-term investments totaled RMB3.3 billion (US$525.4 million) as of March 31, 2014.

23.    On August 19, 2014, the Company announced its unaudited financial results for second quarter 2014. For the quarter, net revenues were RMB958.7 million (US$154.5 million), a 27% increase from the corresponding period in 2013; gross profit was RMB208.6 million (US$33.6 million), a 10% increase from the corresponding period in 2013; and cash, cash equivalents, restricted cash and short-term investments totaled RMB10.2 billion (US$1.6 billion) as of June 30, 2014.

24.    On November 13, 2014, the Company announced its unaudited financial results for third quarter 2014. For the quarter, net revenues were RMB1.11 billion (US$180.3 million), a 29% increase from the corresponding period in 2013; net revenues were RMB1.11 billion (US$180.3 million), a 29% increase from the corresponding period in 2013; and cash, cash equivalents, restricted cash and short-term investments totaled RMB8.7 billion (US$1.4 billion) as of September 30, 2014.

25.    The statements referenced in ¶¶ 20 – 24 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and compliance policies, which were known

to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly recognized revenue for multi-element arrangements; (2) the Company improperly recorded certain nonmonetary transactions to exchange online broadcasting rights of video content with other online video broadcasting companies at the carrying values of the broadcasting rights transacted, instead of the properly-accounted fair value; (3) the Company improperly accounted for its licensed content as long-lived assets; (4) the Company lacked adequate internal controls over financial reporting; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Emerges

26.    On Tuesday, March 17, 2015, the Company announced that it would release its fourth quarter results on Thursday, March 19, 2015, raising red flags by giving investors only two days-notice to prepare for YOKU's earnings announcement.

27.    On March 19, the red flags materialized as the Company reported a net loss of $51.3 million, compared to $4 million in the same quarter of 2013. Moreover, YOKU disclosed that the SEC is investigating certain aspects of the Company's past accounting relating to revenue recognition for multi-part deals, accounting of "non-monetary exchanges of licensed content" and the classification of licensed content as long-lived assets. The Company also announced that it is now "evaluating the impact to its 2014 and historical financial statements."

28.    Specifically, the Company issued a press release announcing unaudited financial results for the fourth quarter and fiscal year ended December 31, 2014, wherein the Company disclosed the following development:

**Recent Development**

As a result of the routine review by the Securities and Exchange Commission (the "Commission") of the Company's annual report on Form 20-F for the fiscal year ended December 31, 2013 ("2013 20-F"), the Company received, and responded to, comments and queries from the staff of the Commission regarding certain accounting treatment adopted by the Company in its historical financial statements. The financial information for all periods presented in this release is prepared on the same basis as the financial statements included in the Company's annual reports and public disclosure documents since its initial public offering, and has not been revised to reflect adjustments, if any, that may result from the resolution of the comments and queries from the staff of the Commission (the "Staff").

The substance of the Staff's comments and the accounting implications with respect to these comments is summarized below:

1. *Revenue recognition for multi-element arrangements* – As disclosed in the Company's 2013 20-F, the Company's advertising arrangements generally contain multiple deliverables, and revenue is recognized at commencement of delivery of the last deliverable in a typical advertising arrangement, as revenue is considered contingent upon the delivery of undelivered items and the Company's right to receive consideration from the customer for delivered items is dependent on the successful delivery of the remaining undelivered items. The Staff has inquired as to the appropriateness of the Company's accounting policy for deferring revenue recognition until the commencement of delivery of the last deliverable and the Company's underlying analysis. The Company has responded to the Staff's comments and continues to believe that its current accounting policy is appropriate and conservative. To date, the Staff has not indicated it would take a different view as to the Company's current accounting. The Company undertakes to expand its disclosure regarding revenue recognition in future filings on Form 20-F in response to the Staff's comments.

2. *Accounting for nonmonetary exchanges of licensed content (known as "barter transaction")* – As disclosed in the Company's 2013 20-F, the Company enters into nonmonetary transactions to exchange online broadcasting rights of video content with other online video broadcasting companies from time to time. The Company records these nonmonetary exchanges at the carrying values of the broadcasting rights given up, which is nil, with no resulting gain or loss being recognized. The Staff was of the view that the Company should have accounted for these barter transactions at fair value, rather than at carrying value.

While the volume of these barter transactions has not been significant historically, the adoption of fair value accounting for these nonmonetary exchanges may result in net gains or losses on the barter exchange, as well as addition or reduction of amortization expense related to content that is swapped from these transactions,

8

all of which were not previously reflected in the Company's historical financial statements.

3. *Application of ASC 920, Entertainment – Broadcasters ("ASC 920")* – The Company currently accounts for its licensed content similar to long-lived assets, as described in its 2013 20-F. The Staff has inquired whether the Company is within the scope of incremental industry accounting guidance of broadcasters as set forth in ASC 920, the key provisions of which relate to the accounting and presentation of programming materials ("licensed content").

The Company agrees that fundamentally, similar to a traditional broadcaster, its business as an Internet television company is dependent on the acquisition and use of content to drive viewership and monetization of that content through advertising placements. The Company understands that the Staff shares the view that the Company is a broadcaster and should account for its licensed content pursuant to ASC 920. This would result in differences as to how the Company's licensed content would be presented on its balance sheet and the methodology in which the Company evaluates recoverability of its licensed content.

The Company is currently evaluating the impact to its 2014 and historical financial statements that may result from the resolution of the issues summarized above. Upon conclusion of the review and assessment process, the Company undertakes to reflect all necessary adjustments based on the appropriate accounting treatment in the Company's annual report on Form 20-F for the fiscal year ended December 31, 2014 (the "2014 Form 20-F") and/or a report on Form 6-K to be furnished to the Commission, as appropriate. Accordingly, the financial information presented herein is subject to change. The Company currently expects to resolve the Staff's comments and file its 2014 Form 20-F by the end of April 2015.

29.    In reaction to this news, YOKU's stock price dropped nearly 11%, from a March 19, 2015 closing price of $15.15 per share to close at $13.50 on March 20, 2015.

30.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired YOKU securities traded on the NYSE during the Class Period (the "Class");

and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, YOKU securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by YOKU or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the

Class Period misrepresented material facts about the business, operations and management of YOKU;

- whether the Individual Defendants caused YOKU to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of YOKU securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- YOKU securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold YOKU securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to,

12

and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of YOKU securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire YOKU securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for YOKU securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about YOKU's finances and business prospects.

44.     By virtue of their positions at YOKU, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

13

45.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of YOKU securities from their personal portfolios.

46.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of YOKU, the Individual Defendants had knowledge of the details of YOKU's internal affairs.

47.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of YOKU.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to YOKU's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for YOKU's securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning YOKU's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired YOKU securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged upon the revelation of the alleged corrective disclosures.

48.     During the Class Period, YOKU's securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

14

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of YOKU securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of YOKU securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of YOKU's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     During the Class Period, the Individual Defendants participated in the operation and management of YOKU, and conducted and participated, directly and indirectly, in the

15

conduct of YOKU's business affairs. Because of their senior positions, they knew the adverse non-public information regarding YOKU's business practices.

53.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to YOKU's financial condition and results of operations, and to correct promptly any public statements issued by YOKU which had become materially false or misleading.

54.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which YOKU disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause YOKU to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of YOKU within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of YOKU securities.

55.     Each of the Individual Defendants, therefore, acted as a controlling person of YOKU. By reason of their senior management positions and/or being directors of YOKU, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, YOKU to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of YOKU and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by YOKU.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   March 25, 2015

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       fmcconville@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN GEWIRTZ & GROSSMAN LLP**
Peretz Bronstein
60 E. 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile:  (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

    1.   I, _____Qiang Wang_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

    2.   I have reviewed a Complaint against Youku Tudou Inc. ("Youku" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

    3.   I did not purchase or acquire Youku securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act

    4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Youku securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

    5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Youku securities during the Class Period as specified in the Complaint.

    6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws

    7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.


Executed ____3/23/2015_____
              (Date)


                              _____
                              (Signature)

                              Qiang Wang
                              _____
                              (Type or Print Name)

YOUKU TODOU INC ADR (YOKU)                    Wang, Qiang

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 3/27/2014 | PUR | 2,238 | $22.8800 |
| 5/2/2014 | PUR | 200 | $22.6800 |
| 5/15/2014 | SLD | 200 | $21.2800 |